## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN M. PETERSON,

Plaintiff,

v.

AT&T MOBILITY SERVICES, LLC,

Defendant.

Civil Action No. 14-439 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff, John Peterson, filed this lawsuit against his former employer AT&T

Mobility Services, LLC ("AT&T"), claiming breach of contract and wrongful termination

stemming from his termination, on October 6, 2010, for violating an internal company policy

requiring the prompt reporting of certain driving infractions.  *See* Compl. ¶ 22, ECF No. 1.

After six months of discovery, *see* Minute Order, dated April 25, 2014, AT&T filed the pending

motions for summary judgment and for sanctions, *see* Def.'s Mot. Summ. J. & Sanctions

("Def.'s Mot."), ECF No. 11.  For the reasons discussed below, AT&T's motion for summary

judgment is granted but the motion for sanctions is denied.

## I.    BACKGROUND

The plaintiff, a resident of Maryland, began working for AT&T in October 2004 in an

hourly position covered by a collective bargaining agreement, which called for graduated

disciplinary measures prior to termination.  Def.'s Statement of Undisputed Facts ("Def.'s

SMF") ¶ 3; Compl. ¶ 2.[1]  The plaintiff excelled in this position and, after about three years, was

---

[1]      Contrary to the Local Civil Rules, the plaintiff filed no "separate concise statement of genuine issues
setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated,
which [] include[s] references to the parts of the record relied on to support the statement."  LCvR 7(h)(1).  Instead,
the plaintiff merely submitted an affidavit summarizing his own version of events leading to his termination, a

promoted to a salaried managerial position, not covered by any collective bargaining agreement, in the Fall of 2007.  Def.'s SMF ¶ 4; Aff. of John M. Peterson (January 22, 2015) ("Pl.'s Aff.") ¶¶ 4, 11, ECF No. 22-1.  Indeed, the plaintiff admits that upon his "promot[ion] to a management position . . . he resigned from the union," Compl. ¶ 11, and "was aware that [he] would no longer be part of the union because [he] was no longer in retail and [he] wasn't hourly," Pl.'s Aff. ¶ 12.  The plaintiff "clearly remember[s]," however, that when he was promoted to this position in 2007, his manager at the time assured him that graduated disciplinary measures still applied.  *Id.* ("I clearly remember [my supervisor at the time] saying that the same sort of graduated response for discipline—verbal warning, written warning and final written discharge—applied to the new job."); Compl. ¶ 14.  AT&T disputes whether any such assurance was given, citing a portion of the plaintiff's own deposition testimony, in which the plaintiff responded "yes" to a question asking whether "the entire conversation" with the manager was how the plaintiff would "no longer have union rights" in the new managerial position.  Decl. of Alison N. Davis, Esq. ("Davis Decl.") Ex. 2 ("Pl. Dep.") 186:15–187:18 ("Q: So that initial conversation was here is the position I'm offering you. In order to get this position you have to get rid of your—you will no longer have union rights? A: Now that is what I have been trying to say for about two hours now is that— . . . Q: So that was the entire conversation? A: Yes."), ECF No. 11-3.

---

response that has complicated the task of ascertaining which facts, if any, are actually disputed.  For this reason, under the Local Civil Rules, this "[C]ourt may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  *Id.*; *See Robertson v. Am. Airlines, Inc.*, 239 F. Supp. 2d 5, 8 (D.D.C. 2002) ("Because [the local rule governing statement of material facts upon summary judgment] helps the district court maintain docket control and decide motions for summary judgment efficiently, the D.C. Circuit has repeatedly upheld district court rulings that hold parties to strict compliance with this rule.") (internal citations omitted).  Consequently, AT&T's statement of material facts is considered admitted for purposes of the instant motion, except where the plaintiff has plainly and clearly raised a dispute with citation to evidence in the record.

The plaintiff switched jobs two more times and obtained, in October 2009, the position

of National Retail Account Executive, which he held at the time of his termination.  Def.'s SMF

¶¶ 5, 7; Pl.'s Aff. ¶ 26.  In this position, the plaintiff's team was headquartered in AT&T's

Maryland office but his sales territory was in Northern Virginia.  Def.'s SMF ¶ 9; Pl.'s Aff. ¶

27.  As part of the plaintiff's job, he was required to drive his own vehicle to visit wireless sales

personnel at national retail chains from the Pentagon to Leesburg, Virginia, requiring travel, on

average, of 250 miles per week.  Def.'s SMF ¶¶ 8–9, 19; Pl.'s Dep. 44:3–24.  According to the

plaintiff, he had difficulties in his relationship with his immediate supervisor.  *See* Pl.'s Aff. ¶¶

35–40.

In August 2010, while his supervisor was on leave, the plaintiff made an off-hand

remark to his acting supervisor about his poor driving record, which included two speeding

citations while he was on personal time in the prior year and a half.  Def's SMF ¶¶ 20, 22; Pl.'s

Aff. ¶ 45.

When advised of the plaintiff's remark, his supervisor initiated an internal investigation

into whether the plaintiff had violated company policy, reflected in AT&T's Code of Business

Conduct, that all employees "regardless of their job duties" were required to report "any

driving-related offense that involves intoxication," and that employees "whose job involves

operation of a company-owned" or leased vehicle "must *also* report [a]ll tickets, citations,

arrests, charges, convictions, guilty pleas . . . for any driving-related offense other than parking

tickets, equipment violations or other non-moving violations."  Davis Decl. Ex. 4 ("AT&T

Code of Business Conduct") at 6, ECF No. 11-3 (emphasis in original); Def.'s SMF ¶¶ 16, 23;

Pl.'s Dep. 190:3–10; 213:4–7.  Examination of the plaintiff's driving record revealed driving

offenses that occurred on December 17, 2008, for failure to obey a highway sign and an expired

registration; on February 24, 2009, for speeding 20 MPH or above, for which he was referred by the court to a mandatory driver improvement program; and an arrest, on June 5, 2010, for reckless driving, for which he was ultimately convicted on October 8, 2010, after AT&T had already terminated him.  Davis Decl. Ex. 5 ("Pl.'s Driving Record"), ECF No. 11-3; Pl.'s Aff. ¶ 45.

As a result of this investigation, the plaintiff was terminated for cause on October 6, 2010, without any prior verbal or written warnings.  Def.'s SMF ¶ 24; Compl. ¶¶ 24–26.

Following his termination, AT&T challenged the plaintiff's unemployment benefits because he was terminated for cause.  Pl.'s Aff. ¶ 57.  On November 10, 2011, the plaintiff was ultimately awarded these unemployment benefits because AT&T could not show that the plaintiff committed misconduct connected with work under applicable Maryland law.  Pl.'s Aff. Ex. 2 ("Order, dated November 10, 2011, Circuit Ct. for Prince George's Cty., Md.") 6:17–21, ECF No. 22-1. The plaintiff alleges that, in addition, AT&T "blackball[ed]" him by labeling him "Non-Rehirable," which has adversely affected his ability to find a comparable job within the industry.  Pl.'s Aff. ¶ 54.

More than three years after his termination, the plaintiff initiated this lawsuit in the Superior Court of the District of Columbia, and AT&T removed the lawsuit to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332.  Now, after ample time for discovery, AT&T has moved for summary judgment and for sanctions.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Summary judgment is properly

granted against a party who, "after adequate time for discovery and upon motion, . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden to demonstrate the "absence of a genuine issue of material fact" in dispute, *id.* at 323, while the nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor, *see Anderson v. Liberty Lobby, Inc.* ("*Liberty Lobby*"), 477 U.S. 242, 248 (1986); *Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015) (noting that, on summary judgment, the appropriate inquiry is "whether, on the evidence so viewed, a reasonable jury could return a verdict for the nonmoving party") (internal quotations and citation omitted); *see also Greer v. Paulson,* 505 F.3d 1306, 1315 (D.C. Cir. 2007) ("[S]heer hearsay . . . counts for nothing on summary judgment.") (internal quotation marks omitted); FED. R. CIV. P. 56(c) and (e)(2), (3).

"Evaluating whether evidence offered at summary judgment is sufficient to send a case to the jury," is "as much art as science." *Estate of Parsons v. Palestinian Auth*., 651 F.3d 118, 123 (D.C. Cir. 2011). This evaluation is guided by the related principles that "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), and "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *id.* at 1863 (quoting *Liberty Lobby,* 477 U.S. at 255). Courts must avoid making "credibility determinations or weigh[ing] the evidence," since "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150–51 (2000); *see also Burley v. Nat'l*

*Passenger Rail Corp.*, No. 14-7051, 2015 WL 5474078, at *3 (D.C. Cir. Sept. 18, 2015).  In

addition, for a factual dispute to be "genuine," the nonmoving party must establish more than

"[t]he mere existence of a scintilla of evidence in support of [its] position," *Liberty Lobby*, 477

U.S. at 252, and cannot rely on "mere allegations" or conclusory statements, *see Equal Rights*

*Ctr. v. Post Props.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011); *Veitch v. England*, 471 F.3d 124,

134 (D.C. Cir. 2006); *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9

F.3d 150, 154 (D.C. Cir. 1993); *accord* FED. R. CIV. P. 56(e).  If "'opposing parties tell two

different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on a

motion for summary judgment.'"  *Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015) (quoting *Scott*

*v. Harris*, 550 U.S. 372, 380 (2007)).  The court is only required to consider the materials

explicitly cited by the parties, but may on its own accord consider "other materials in the

record."  FED. R. CIV. P. 56(c)(3).

## III.    DISCUSSION

The parties agree that no written employment agreement exists between the parties, but

the plaintiff nevertheless contends that AT&T breached an employment agreement by

terminating him without first applying graduated disciplinary measures, which a former

supervisor allegedly orally conveyed to him when he was first promoted to a managerial

position.  Pl.'s Opp'n Def.'s Mot. Summ. J. & Sanctions ("Pl.'s Opp'n") ¶ 9, ECF No. 22;

Compl. ¶¶ 14, 24–27.  The plaintiff also claims wrongful termination because he was not

provided with, or made aware of, the company policy requiring the reporting of "all traffic

infractions, whether or not the ticket even results in a fine or conviction," Compl. ¶¶ 22, 28, the

violation of which policy led to his dismissal, *id.* ¶ 22.[2]  AT&T contends that, as an at-will

employee, the plaintiff was subject to termination at any time for any reason, and that the nature

of this employment relationship was never qualified by any oral agreement.  Def.'s Mem. Supp.

Mot. Summ. J. & Sanctions ("Def.'s Mem.") at 10, 12, ECF No. 11-2.  Consequently, AT&T

argues that both of the plaintiff's claims fail as a matter of law since no breach of contract

occurred and his termination was not wrongful because AT&T simply exercised its right to

terminate the plaintiff, not in violation of any "clear mandate of public policy," and, in any

event, was justified in doing so due to the plaintiff's violation of company policy.  *Id.* at 15.

Each of the plaintiff's claims is discussed *seriatim* below. [3]

---

[2]        The plaintiff also contends that he did not violate the policy, Pl.'s Aff. ¶¶ 49–51, but even if he is correct, AT&T would still be able to terminate his employment based on a mistaken application of the internal policy, if AT&T is correct that his employment was unconditionally at-will. *See Smith v. Union  Labor Life Ins. Co.*, 620 A.2d 265, 269–70 (D.C. 1993) (affirming summary judgment to defendant employer where the plaintiff claims that she was terminated for violating a policy she in fact followed because the discharge violated no employment contract and was not contrary to public policy); *Alibalogun v. First Coast Sec. Sols., Inc.*, 67 F. Supp. 3d 211, 218 (complaint "merely" alleging termination due to "a false reason," without more, is inadequate to support a claim of wrongful termination); *cf. Pope v. Romac Intern.*, 829 A.2d 945, 947 (D.C. 2003) (holding the *pro se* plaintiff has no breach of contract or wrongful discharge claim against defendant employer where the employer wrongfully characterized her discharge as "for cause," but remanding to trial court to consider whether the *pro se* plaintiff suffered some other compensable injury if the employer, as alleged, intentionally mischaracterized the plaintiff's discharge in order to reduce its unemployment contributions).

[3]        AT&T has also moved for sanctions, under 28 U.S.C. § 1927, against plaintiff's counsel for bringing a meritless claim.  Def.'s Mem. at 16; Def.'s Reply Supp. Mot. Summ. J. & Sanctions ("Def.'s Reply") at 19, ECF No. 23.  Section 1927 authorizes the imposition of "excess costs, expenses, and attorneys' fees reasonably incurred" as a result of an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.  The D.C. Circuit "has not established whether the standard . . . under 28 U.S.C. § 1927 should be 'recklessness' or the more stringent 'bad faith.'" *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 905 (D.C. Cir. 1998) (citing *United States v. Wallace*, 964 F.2d 1214, 1218–19 (D.C. Cir. 1992)); *see also Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 136–137 (D.D.C. 2013).  According to AT&T, these excess cost sanctions are warranted because, by the conclusion of the plaintiff's deposition, plaintiff's counsel was on notice that no viable claim existed, yet "recklessly decided to press forward." Def.'s Reply at 19; Def.'s Mem. at 16.  The Court finds that the plaintiff's arguments are not so utterly without merit that continued litigation of this case through a single round of summary judgment briefing "multiplied the proceedings" or otherwise meets the high bar of "recklessness" or "bad faith" required under § 1927.  *See, e.g,. Dover v. Medstar Wash. Hosp. Ctr., Inc*., 989 F. Supp. 2d 57, 63 (D.D.C. 2013) (denying § 1927 sanctions even where plaintiff's counsel filed "an Amended Complaint with claims that were clearly inadequate, and which he agreed he had not properly researched," since that conduct "simply do[es] not meet the very high standard" under the statute); *Kassatly v. Dynaco Acquisition Corp*., No. 96-2419-LFO, 1997 WL 31104, at *3 (D.D.C. Jan. 22, 1997) ("The advancement of meritless positions, . . . unless it is utterly without colorable basis, will not support [sanctions under § 1927].").  Accordingly, the Court denies AT&T's motion for sanctions.

A.      **Breach of Contract**

The plaintiff premises his breach of contract claim on an alleged oral promise, made by his then-manager when he accepted a managerial position, that the right he enjoyed as a union employee to verbal and written warnings prior to termination would nonetheless continue.  Pl.'s Aff. ¶ 12; Compl. ¶ 14.  AT&T counters that it is entitled to summary judgment on this claim because, after ample discovery, the plaintiff has failed to provide any admissible evidence to support this claim, other than his own self-serving statement in his affidavit about an oral promise, which is contradicted by his deposition testimony.  Def.'s Reply Supp. Mot. Summ. J. & Sanctions ("Def.'s Reply") at 13, ECF No. 23.  The Court agrees with AT&T.

Under District of Columbia law, employment is presumed to be terminable at will by either party, and the presumption is rebuttable by "a showing that 'the parties intended that termination be subject to specific preconditions.'"  *Futrell v. Dep't of Labor Federal Credit Union*, 816 A.2d 793, 806 (D.C. 2003) (quoting *Strass v. Kaiser Found. Health Plan*, 744 A.2d 1000, 1011 (D.C. 2000)).[4]  Employee personnel or policy manuals may create contractual rights

---

[4]      In this case, the plaintiff was initially hired to work in Maryland, Pl.'s Aff. ¶ 10, the alleged oral "precondition" was made in Virginia, *id.* ¶ 11, he worked in Washington, D.C. for a period, *id.* ¶ 19, during his last position the plaintiff resided and had his sales territory in Virginia, *id.* ¶ 27; Pl.'s Dep. 37:15–18, but he maintained an office in Maryland and was ultimately discharged there, Pl.'s Dep. 34:8–35:25.  Given these contacts with all three jurisdictions, AT&T takes the position that the law does not differ sufficiently in all three jurisdictions to make a difference.  Def.'s Mem. at 9 ("Regardless of whether the Court applies the law of the District of Columbia, Maryland or Virginia, Plaintiff's breach of contract claim fails", 13 ("[I]t is uncertain which jurisdiction has the most significant relationship.  Nevertheless, regardless of the law which the Court chooses to apply, Plaintiff's [wrongful termination] claim fails.").  The plaintiff does not address the choice of law issue at all, but cites to District of Columbia law.  Pl.'s Opp'n ¶ 10.

          "A federal court sitting in diversity must apply the choice-of-law rules of the forum state—here, the District of Columbia."  *Levine v. Am. Psychological Ass'n (In re APA Assessment Fee Litig.),* 766 F.3d 39, 51 (D.C. Cir. 2014).  In light of the parties' apparent agreement that the applicable law in the various potential jurisdictions is materially identical, no choice-of-law analysis is necessary and the Court applies District of Columbia law.  *Id.* at 45.  In any event, even if a conflict existed among the jurisdictions, where there is no clear answer provided upon application of the factors provided in Restatement (Second) of Conflict of Laws § 145(1) (1971), District of Columbia law would apply, *id.* at 55 (citing *Wu v. Stomber,* 750 F.3d 944, 949 (D.C. Cir. 2014) ("D.C. choice-of-law rules require, in a case where the [Restatement] factors do not point to a clear answer, that we apply D.C. tort law, the law of the forum state.")), particularly since this "outcome 'works no unfairness to plaintiffs, because they chose to pursue their claim in the District of Columbia,'" *id.* (quoting *Levine v. Am. Psychological Ass'n (In re APA Assessment Fee Litig.),* 862 F. Supp. 2d 1, 14 (D.D.C., 2012)).

for the employee but "such implied contractual rights can be disclaimed, and 'the legal effect of such a disclaimer, is in the first instance, a question for the court to decide.'" *Id.* (citing *Strass*, 744 A.2d at 1011). "The facts and circumstances surrounding the hiring and the conduct of the parties may provide evidence sufficient to rebut the presumption." *Nickens v. Labor Agency of Metro. Wash.*, 600 A.2d 813, 816 (D.C. 1991) (citing *Sullivan v. Heritage Found.*, 399 A.2d 856, 860 (D.C. 1979) and *Wash. Welfare Ass'n, Inc. v. Wheeler*, 496 A.2d 613, 615 (D.C. 1989)).

In the instant case, the plaintiff seeks to imply a contractual right to specific termination preconditions based on a "promise" received from a former supervisor when he was first promoted to a managerial position, two jobs prior to the one he had when he was ultimately terminated in October 2010. Pl.'s Opp'n ¶ 9. The only evidence he presents, however, is his own affidavit, despite months of discovery, stating that "I clearly remember [my supervisor at the time] saying that the same sort of graduated response for discipline—verbal warning, written warning and final written discharge—applied to the new job." Pl.'s Aff. ¶ 12. Plaintiff presents no corroboration for this recollection, such as an affidavit or deposition testimony from the former supervisor, who allegedly made the statement, or any other witness.

The D.C. Circuit has recently noted that "a plaintiff's own firsthand observations of relevant facts are probative evidence, and that we must not set them aside merely because they come from a party who necessarily has a stake in the outcome." *Burley*, 2015 WL 5474078, at *6. Yet, the veracity of the plaintiff's recollection is significantly undermined by the plaintiff's clear deposition testimony that he fully understood that his new managerial position would require forfeit of all of his rights that he may have had under the union, which would include the collective bargaining agreement's requirement of graduated warnings. Pl.'s Dep. at 182:21–

183:4 (Plaintiff responding "Right" to a question confirming his "understanding of that conversation was that all rights that [he] may or may not have had under the union were no longer, once [he] accepted that position as a Small Business Advisor[.]"); *see also* Pl.'s Aff. ¶ 11 ("[My former supervisor] told me that I would be moving from a unionized to a non-union position"); *id*. ¶ 12 ("I was aware that I would no longer be part of the union . . . .").

The plausibility of the purported oral precondition applying to the plaintiff is also undermined by the plaintiff's admissions at his deposition that, while he received documentation regarding performance quotas, he never received "any document that discussed disciplinary procedures" for "policy violations." Pl.'s Dep. 228:15–21.[5] Given the lack of corroboration of the alleged oral precondition, as well as the plaintiff's own testimony, at both his deposition and in his affidavit, acknowledging that, as a manager, he was no longer subject to union protection, the plaintiff's recollection of an oral precondition, without more, is insufficient to create a genuine issue of material fact on which a reasonable jury could conclude that the plaintiff's at-will employment was specially conditioned for him to receive the graduated warnings prior to termination to which union members were entitled.[6] *See Burley*,

---

[5]    The plaintiff denies that he received a copy of AT&T's Code of Business Conduct or was even aware of this Code, *see* Pl.'s Dep. at 218:20-219:22, 228:3-6; Pl.'s Aff. ¶ 50, although he admits that he did receive some training in reference to its contents, *id*. at 218. The Code of Business Conduct plainly states that for at-will employment, AT&T retains the right "TO DISMISS ANY EMPLOYEE AT ANY TIME FOR ANY REASON, WITH OR WITHOUT CAUSE, WITH OR WITHOUT NOTICE AND WITHOUT THE NEED TO COMPLY WITH ANY PLAN OR PRACTICE." AT&T Code of Business Conduct at 2 (emphasis in original). This document goes on to describe the terms of the "AT WILL NATURE OF EMPLOYMENT," which "CAN ONLY BE CHANGED IN WRITING AND ONLY IN A DOCUMENT SIGNED BY BOTH THE SENIOR EXECUTIVE VICE PRESIDENT-HUMAN RESOURCES AND THE EMPLOYEE," and stresses that "ANY CONTRARY REPRESENTATION IS INVALID." *Id*. (emphasis in original). While the plaintiff's averred ignorance of this Code may serve neatly to avoid being subject to its disclaimer of any conditions on termination for at-will employees, such ignorance does not relieve the plaintiff of coming forward with admissible evidence regarding the oral promise on which he bases his breach of contract claim.

[6]    AT&T also argues that the oral precondition, if it could be proven, is irrelevant because it was in connection with another position than the one the plaintiff was in when he was terminated. Def.'s Reply at 13. The plaintiff has averred that, after his initial promotion to the managerial position, the subsequent job changes were lateral and, consequently, did not result in any changes in the employment relationship. Pl.'s Aff. ¶¶ 16,19, 27. The Court does not reach this issue of whether the oral precondition covers his position at the time of his

2015 WL 5474078, at *6 (finding that plaintiff's observations, without more, were insufficient to defeat summary judgment for employer); *see also Turner v. Shinseki*, 824 F. Supp. 2d 99, 118 (D.D.C. 2011) ("[W]hen considering a summary judgment motion 'the Court need not rely on any conclusory allegations unsupported by factual [evidence].'") (quoting *Harris v. Wackenhut Servs., Inc.*, 648 F. Supp. 2d 53, 58 (D.D.C. 2009)) (latter alteration in the original); *Gen. Elec. Co. v. Jackson*, 595 F. Supp. 2d 8, 36 (D.D.C. 2009) (observing that when a "declaration is self-serving and uncorroborated," it is "of little value at the summary judgment stage"); *Fields v. Office of Johnson*, 520 F. Supp. 2d 101, 105 (D.D.C. 2007) ("Self-serving testimony does not create genuine issues of material fact, especially where that very testimony suggests that corroborating evidence should be readily available."); *Clampitt v. Am. Univ.,* 957 A.2d 23, 37 (D.C. 2008) (finding plaintiff could not "avoid summary judgment" with claimed oral agreement regarding term of employment since "the inferences she asked the court to draw had to be based on more than speculation" and "[s]he was not entitled to avoid summary judgment by merely asserting that the jury might, and legally could, disbelieve the defendants" since "'the mere possibility of disbelief is not enough to avoid summary judgment. There must instead be evidence from which a rational factfinder could infer that the [defendants] lied'" (quoting *Gould v. Kemper Nat'l Ins. Cos.*, No. 95-1883, 1996 WL 87498, at *2 (7th Cir. Feb. 27, 1996)) (alteration in original; other citations and internal quotation marks omitted)).

The plaintiff argues for the first time in his opposition that AT&T also breached its contract by failing to transfer the plaintiff prior to terminating him, a procedure that was discussed as an option within AT&T's Human Resources Department. Pl.'s Opp'n ¶10. The evidence, however, shows that no procedure existed for first transferring an employee, who has

---

termination, since the breach of contract claim is resolved on the alternate grounds that the plaintiff is unable to present sufficient admissible evidence of an oral promise to create a triable issue.

been found in violation of company policy, before terminating him. *See* Pl.'s Aff. Ex. 1

("AT&T HR Emails ") at 17 (noting that due to the plaintiff's failure to disclose the 2009

citation as required under the AT&T Code of Business Conduct, the department may be looking

at discipline rather than "a job search"), ECF No. 22-1.[7]   To the contrary, the Code of Business

Conduct makes clear AT&T's retained right to dismiss any at-will employee "WITHOUT THE

NEED TO COMPLY WITH ANY PLAN OR PRACTICE."   AT&T Code of Business Conduct

at 2 (emphasis in original).

Accordingly, AT&T is entitled to summary judgment on the plaintiff's breach of

contract claim.

## B.      Wrongful Termination

The plaintiff apparently believes that the "real issue which led to [his] termination had

nothing to do with driving or failing to report anything or violating any rules," Pl.'s Aff. ¶ 40,

and that the "idea that [he] was fired for not reporting one or more speeding tickets is simply not

the true reason," *id*. at ¶ 44.   Consequently, he argues his supervisor's "single-minded

objective" was to terminate his employment and she "did not care what the reason was."   Pl.'s

Opp'n ¶ 13.   Even if the plaintiff's belief and argument are correct, this is not sufficient to

sustain a wrongful termination claim.

"It has long been the common law in this jurisdiction that an at-will employee may be

discharged 'at any time and for any reason, or for no reason at all.'"  *Rosella v. Long Rap, Inc.*,

Nos. 08-CV-629, 08-CV-632, 08-CV-631, 2015 WL 4604295, at *2 (D.C. July 30, 2015)

---

[7]        AT&T's Human Resources staff expressed uncertainty regarding whether the AT&T Code of Business
Conduct or the legacy Cingular policy governed disciplinary measures that may be taken against the plaintiff.
AT&T HR Emails at 5.  Neither policy provides any mandatory preconditions to termination.  *See* Pl.'s Aff. Ex. 3
("Legacy Cingular Policy) at 2–3 ("Drivers must maintain a satisfactory motor vehicle record *both on and off* the
job.  An unsatisfactory driving record may lead to counseling, training or some degree of discipline up to and
including termination.  Under appropriate circumstances, Cingular Wireless may transfer the employee to a non-
driving job if one is available for which the employee is qualified."), ECF No. 22-1 (emphasis in the original).

(quoting *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991)).  In *Adams,* the

D.C. Court of Appeals recognized a "very narrow" non-statutory exception to this doctrine

when "an employer's discharge of an employee for the employee's refusal to violate a statute is a

wrongful discharge in violation of public policy."  597 A.2d  at 34 (quoting *Tameny v. Atlantic

Richfield Co.*, 27 Cal.3d 167, 175 (1980)).  Thus, to bring a wrongful termination claim in the

District of Columbia, the plaintiff must demonstrate that his discharge violates a clear mandate

of public policy, as expressed in statute, regulations or the Constitution.  *See Hoff v. Rein*, 110

A.3d 561, 564 (D.C. 2015); *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 645

(D.C. 2005) (en banc); *Carl v. Children's Hosps.*, 702 A.2d 159, 164 (D.C. 1997) (en banc).

The plaintiff was terminated for violation of a company policy requiring immediate

reporting of any driving offenses.  Def.'s SMF ¶ 22–24.  The plaintiff argues that his

termination was wrongful because it was "mean-spirited," Pl.'s Opp'n ¶ 7, illegitimate because

he was unaware of the policies he violated, *id.* ¶¶ 9, 13, and mistaken because the plaintiff was

ultimately awarded unemployment benefits over the objection of AT&T that he was fired for

cause, *id.* ¶ 8.  The plaintiff, however, fails to explain—and the Court cannot discern—how his

discharge, even if it were "trumped-up," Pl.'s Aff. ¶ 53, violated a "clear mandate of public

policy" implicit in "statutes or municipal regulations, or in the Constitution," *see Beretta*, 872

A.2d at 645.  To the contrary, AT&T's enforcement of its internal policies and standards for

safe driving serve as a means of monitoring the driving records and, thereby, minimizing the

driving risks posed by its employees, particularly those engaged in driving on company

business, where accidents could result in liability and reputational harm to AT&T.  As such,

these internal policies carry public policy benefits.

At the same time, the plaintiff's distress is understandable that, after six years of successive advancement in positions at AT&T, his employment at the company was abruptly terminated.  Even if the plaintiff's correctly perceives that AT&T "overreacted and adopted a hair-trigger approach" to his driving offenses, however, "[i]t is not the Judiciary's place to micro-manage an employer's" enforcement of its internal policies since, "[a]s the Supreme Court has stated, '[c]ourts are generally less competent than employers to restructure business practices, and unless mandated to do so by Congress they should not attempt it.'"  *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 496 (D.C. Cir. 2008) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 578 (1978)).

Accordingly, AT&T is entitled to summary judgment on the plaintiff's wrongful termination claim.

IV.     **CONCLUSION**

For the foregoing reasons, AT&T's motion for summary judgment is granted but its motion for sanctions is denied.

An Order consistent with the Memorandum Opinion will be entered contemporaneously.

**SO ORDERED**

Date: September 28, 2015

_____

BERYL A. HOWELL
United States District Judge